IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 19, 2015

## STATE OF TENNESSEE v. DEBORAH B. BOWES

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S61793      R. Jerry Beck, Judge**

**No. E2014-01462-CCA-R3-CD - Filed May 29, 2015**

The appellant, Deborah B. Bowes, pled guilty in the Sullivan County Criminal Court to one count of filing a false report, for which she received a sentence of eight years. On appeal, the appellant challenges the trial court's denial of alternative sentencing. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Suzanne S. Queen, Bristol, Tennessee, for the appellant, Deborah B. Bowes.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Barry P. Staubus, District Attorney General; and Teresa A. Nelson and Josh D. Parsons, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On March 6, 2013, a Sullivan County Grand Jury returned an indictment charging the appellant with one count of filing a false report, a Class D felony. Tenn. Code Ann. § 39-16-502. On March 7, 2014, the appellant entered a guilty plea to the charged offense. At the plea hearing, the State recited the following factual basis underlying the appellant's plea:

> [O]n 8-5-2012[,] officers of the Kingsport Police Department
> responded to America's Best Inn at 9980 Airport Parkway,
> which is a location in Sullivan County, Tennessee, in reference

to a disturbance.

Upon arrival[,] Officers Clare and Adams spoke with the [appellant], Deborah Bowes. [The appellant] advised them that her boyfriend, a gentleman by the name of Terry Tabor . . . , had assaulted her by hitting her in the face and throwing her around the room. During the conversation in which [the appellant] gave information to the officers, she stated that the two had been drinking. That Mr. Tabor had choked her at least three times; had torn the clothes that she was wearing; and attempted to take her sexually, but she was able to fight him off. [The appellant] did present with a scratch on her face, but that occurred at a separate location, not . . . associated with this case.

Then ultimately, based on the written statement that [the appellant] gave to the officers regarding the facts and details, Mr. Tabor was arrested for aggravated domestic assault, false imprisonment, and attempted sexual assault, and was arrested that evening.

Later on, on October 3rd, 2012, in the Bristol General Sessions Court for the case associated with this, [the appellant], . . . identified as the victim in that particular case, stated under oath that the assault had never occurred. And at the conclusion of the preliminary hearing[,] Assistant District Attorney Kaylin Render advised the officers as such, and she was charged with filing a false report at that time.

The appellant agreed primarily with the facts recited by the State but stated that her testimony was that "she didn't remember and she didn't think [the assault] happened," not that it never occurred. Nevertheless, she acknowledged that "a reasonable trier of fact could find [her] guilty by the use of the beyond a reasonable doubt standard."

Pursuant to the plea agreement, the appellant was sentenced as a Range III, persistent offender to an eight-year sentence. The plea agreement further provided that the trial court would determine the manner of service of the sentence.

At the sentencing hearing, the State submitted the appellant's presentence report as an exhibit. The report reflected that the appellant had the following prior convictions: two counts of passing a bad check; operating a motor vehicle after being declared a habitual

traffic offender, second or subsequent offense; being declared a habitual traffic offender; felony failure to appear; driving on a suspended license; accessory after the fact of distribution of drugs; distribution of crack cocaine; driving while impaired; violating the child restraint law; selling cigarettes to a minor; possession of cocaine; and four counts of petit larceny. The report further reflected that the appellant had violated probationary sentences five times in the past.

The appellant told the preparer of the presentence report that she had attended high school through the tenth grade and that she had obtained a general equivalency diploma (GED). The appellant reported that her health was poor but that she had been denied disability. She said that she drank beer occasionally, that her boyfriend was an alcoholic, and that "drinking causes arguments and problems." She said that she first used marijuana when she was eighteen years old, that she used the drug occasionally, and that she had not used it for years. The appellant said that some of her problems were the result of being sexually abused by her father when she was a child.

The appellant's mother testified that she did not know about the sexual abuse until years after it happened. She said that the appellant's boyfriend verbally abused the appellant and that the abuse "affect[ed] her mind a lot." She stated that the appellant "used to be a real attractive person" who was able to maintain employment but that the appellant "seem[ed] to have lost all self-esteem."

The appellant's mother said that she had several health problems, including lung cancer. The appellant did her mother's housework, mowed her yard, and cooked for her. The appellant also accompanied her to doctor's appointments, talked to the doctors for her, and, because the appellant's mother had memory problems, the appellant helped her recall the conversations with the doctors. Additionally, the appellant helped with her mother's pain medicine and assisted in caring for her mother's three-year-old grandson. The appellant's mother said that the appellant was the only person who could help her. The appellant did not have a driver's license and relied on her mother to "chauffeur" her.

The appellant testified that her father sexually abused her for ten years when she was a child. After she left home, she "[e]nded up" with men who were verbally, physically, and emotionally abusive. She said that she did not have any self-esteem and that she wanted to seek help to deal with the psychological trauma of the abuse.

The appellant acknowledged a history of criminal convictions, but she stated that most of the convictions were more than ten years old and occurred when she was dealing with substance abuse issues. She testified that she left home when she was sixteen years old and began experimenting with drugs when she was eighteen years old. She had been through two

-3-

substance abuse treatment programs and had not abused drugs since she began living near her mother. The appellant said that she was no longer addicted to drugs and that she did not drink alcohol.

The appellant said that none of her convictions involved violent crimes. She acknowledged that she had violated probation in the past, but she asserted that she had completed probation successfully on three occasions. The appellant said she had learned from her mistakes, and she wanted to take care of her mother.

Regarding the instant charges, the appellant acknowledged that her testimony against Tabor was not consistent with her statement to officers on the night Tabor was arrested. She said that she was "very inebriated" when she wrote the statement, that she had no memory of writing it, and that it did not look like her handwriting. She said that she realized that "drinking was not for [her]." She also stated that she was taking Neurontin at the time she gave her statement but had stopped.

The trial court found that the presentence report was "highly negative" and that "the unfavorable factors heavily outweigh[ed] any favorable factor toward release in the community." Regarding community corrections, the court noted that the appellant said she currently had no drug problems; therefore, community corrections would not further her rehabilitation. Moreover, her release would not be in the best interest of the community. Accordingly, the trial court denied alternative sentencing. On appeal, the appellant challenges the ruling of the trial court.

## II. Analysis

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in her own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the appellant

to demonstrate the impropriety of her sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In the instant case, although the appellant was convicted of a Class D felony, she is a Range III, persistent offender; therefore, she is not considered to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Regardless, because the sentences imposed are ten years or less, the appellant is eligible for alternative sentencing. See Tenn. Code Ann. § 40-35-303(a).

On appeal, the appellant "concedes that the trial court had ample justification for denying her standard probation, based on her criminal history." Nevertheless, she argues that the court should have placed her on community corrections. The State responds that the trial court did not err by denying community corrections. We agree with the State.

The Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

An offender is not automatically entitled to community corrections upon meeting the

minimum requirements for eligibility. State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

For offenders not eligible for community corrections under subsection (a), Tennessee Code Annotated section 40-36-106(c) creates a "special needs" category of eligibility. Subsection (c) provides that

> [f]elony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c).

When determining a defendant's suitability for alternative sentencing, courts should consider whether the following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), are applicable:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The trial court's comments indicate that its denial of alternative sentencing, including community corrections, was based upon a finding that confinement was necessary to protect

society by restraining the appellant who had a long history of criminal conduct, that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the appellant, and that the appellant lacked potential for rehabilitation. As we noted earlier, the appellant has numerous prior convictions. In many of the cases, she received a suspended sentence; yet, she has continued to reoffend. See State v. Alton Ray Thomas, No. M2006-00815-CCA-R3-CD, 2007 WL 465135, at *4 (Tenn. Crim. App. at Nashville, Feb. 13, 2007). Further, she has violated probationary sentences. We conclude that, given the appellant's extensive criminal record, her failure to rehabilitate, and her previous inability to comply with the terms of release into the community, the trial court did not err by denying alternative sentencing.

### III.  Conclusion

In sum, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE